IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MELVIN T. HOUSTON,

    Plaintiff,

v.                                                                  CV 08-1168 WPL/DJS

CASA CHEVROLET, INC. and
GROUP 1 AUTOMOTIVE, INC.,

    Defendants.

## ORDER DENYING
## MOTION FOR SUMMARY JUDGMENT

    Melvin Houston, an African-American man, sued Casa Chevrolet, Inc. and Group 1 Automotive, Inc. for racial discrimination and harassment under Title VII, for violation of the New Mexico Human Rights Act (NMHRA), and for retaliatory discharge in violation of public policy. (Doc. 55.) Group 1's Motion for Summary Judgment seeks summary judgment on all claims brought by Houston. (Doc. 88.) Considering the evidence in the light most favorable to Houston, *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1142 (10th Cir. 2009) (quoting FED. R. CIV. P. 56(c)), because there are fact issues present that preclude the entry of summary judgment, I will deny Group 1's Motion for Summary Judgment.

### REQUESTS TO STRIKE AFFIDAVITS

    Before I can reach the merits of Group 1's motion, I must address Group 1's request that I strike an affidavit from Houston and affidavits from Robert Medina and Gabriel Sanchez, two of Casa Chevrolet's former managers, that Houston submitted in connection with his Response. (Doc.

1

97 at 5-9.)

Group 1 claims that Houston's affidavit concerning whether he was an "at-will" employee at Casa Chevrolet directly contradicts his prior deposition testimony and that I should disregard the affidavit because it is an attempt to create a sham issue of fact. In making this determination, courts consider whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Law Co., Inc. v. Mohawk Constr. and Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001)).

Group 1's Employee Handbook provides that its employees are "at-will" employees. Houston's deposition testimony on this issue is somewhat confusing and contradictory. He claims that he was not told when he was hired that he was an at-will employee. (Doc. 88, Ex. A at 24-25.) He admitted that he signed "a bunch of documents," one of which was an acknowledgment of receipt of the Employee Handbook. *Id.* at 25. He initially denied that he was an at-will employee, *id.* at 26, but later admitted that "this at-will employment . . . didn't change during the whole six months [he was] at Casa . . . ." *Id.* at 26-27. In the Affidavit submitted with his Response, Houston attached documents concerning his promotion to new car sales manager and relied upon the written guarantee of $10,000 per month for 90 days to support his assertion that he did not understand he was still an "at-will" employee after being guaranteed a salary as the new car sales manager. (Doc. 96, Ex. D.)

Because the parties have attached only excerpts of Houston's deposition for my review, I cannot tell for certain whether Houston was represented by counsel at the deposition and whether

2

he had access to the documents concerning his promotion. I assume that Group 1 took Houston's deposition, so he was cross-examined by Group 1 during the deposition. If Houston was not represented by counsel, counsel could not clear up any discrepancies in Houston's testimony after Group 1 had completed its questioning. It appears that Houston did not have access to the documents concerning his promotion when he gave his deposition. Further, the affidavit attempts to explain the confusing deposition testimony about whether Houston was an "at-will" employee. Considering these factors, I conclude that Houston's affidavit is not an attempt to create a sham issue of fact and decline to strike Houston's affidavit.

Houston also submitted affidavits from Robert Medina, who was the finance director at Casa, and from Gabriel Sanchez, who was Casa's general manager. Group 1 requests that these affidavits be stricken because Houston's contact with them violated New Mexico Rule of Professional Conduct 16-402, which prohibits a lawyer from contacting a person with "managerial responsibility" on behalf of a corporation. NMRA 16-402.[1] In support of this position, Group 1 cites *Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201 (10th Cir. 2000), in which the Tenth Circuit, construing Oklahoma law, purported to apply the "managing-speaking agent" test to determine whether an attorney had improperly conducted ex parte contacts with two employees of the School District.[2] *Id.* at 1208-09. Group 1 also relies upon an unpublished Order by Judge Puglisi, which held that a lawyer may not contact former employees of a corporate party about attorney-client privileged

---

[1] New Mexico's Rules of Professional Conduct apply to this action pursuant to D.N.M.LR-Civ. 83.9.

[2] In reality, as Judge Briscoe noted in her concurring opinion, the majority adopted the party-opponent admission test that is consistent with FED R. EVID. 801(d)(2)(D)'s "scope of employment test." *Weeks*, 230 F.3d at 1214-15. I have previously distinguished the *Weeks* decision when applying Rule 16-402. See *Pueblo of Zuni v. United States*, No. CV-01-1046 WJ/WPL (D.N.M. Apr. 23, 2008), Doc. 247, *aff'd* Doc. 337.

material. *See Teran v. Consol. Freightways Corp. of Del.*, No. CV-00-229 RLP/WWD (D.N.M. Jan. 18, 2001), Doc. 53. Group 1 asserts that *Teran* is "the test by which such contacts are measured in this District . . . ." (Doc. 97 at 8.)

There are at least two reasons to reject Group 1's argument. First, only paragraph seven in Medina's affidavit addresses potentially attorney-client privileged material when it discusses a meeting with the law firm Fisher & Phillips, and none of Sanchez's affidavit even remotely addresses potentially attorney-client privileged material. Thus, the request to strike Sanchez's affidavit and all paragraphs except paragraph seven of the Medina affidavit is denied. Further, since Group 1 inquired about the meeting with Fisher & Phillips during Houston's deposition and apparently plans to introduce testimony about this meeting at trial, Group 1 has waived any attorney-client privilege that the meeting may have had. *United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979) ("Even if the privilege exists it is waived when the client voluntarily reveals the information to another or his attorney does so with his consent.") (citation omitted).

Second, I doubt that Judge Puglisi thought that he was setting the test in this district for contacts with a former employee when he issued an unpublished order. Even if he did, his opinion has been superseded by subsequent events. The Committee Commentary to Rule 16-402 was amended in 2008 and now specifically allows lawyers to contact former employees of a corporation:

> In the case of a represented organization, this rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is not required for communication with a former constituent.

NMRA 16-402, Comment 7. Although Group 1 quoted the text of Rule 16-402, it failed to cite or even mention this Comment. Further, the position set forth in the Comment comports with the

majority position on this issue. *See Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 683 (D.Kan. 2000) ("[T]his court concluded, as had the American Bar Association and virtually every court which had looked at the issue since the ABA issued its formal opinion, that *former* employees who no longer have an employment relationship with the organizational party are not included within the meaning of the term 'party' for purposes of Rule 4.2.") (emphasis in original) (citation omitted).

Group 1's request to strike the affidavits of Medina and Sanchez is denied.[3]

### FACTUAL BACKGROUND

Houston was employed by Group 1 and worked at Group 1's Casa Chevrolet Store in Albuquerque from August of 2007 until he was terminated in February of 2008. Houston was hired as a finance and insurance manager for Casa. In September and October of 2007 Houston was the fourth ranked (out of 25) finance manager for Group 1 and was the second ranked finance manager for Casa. In November of 2007 Houston was again ranked fourth for Group 1 and was the top ranked finance manager for Casa. Because of his outstanding performance, Houston was promoted to the position of new car sales manager in December of 2007 and was also successful in this position. In December of 2007 Houston's department was in the top ten of the 33 dealerships owned by Group 1, and in January of 2008 the department was in the top five. In February of 2008 the new car sales department was again in the top ten and Houston was the top sales manager of the 33 regional dealerships owned by Group 1.

---

[3] Group 1 also attacks the "conclusions, generalities and occasional legal conclusions" in the affidavits submitted by Houston. (Doc. 97 at 4-5.) Some of the information submitted (*i.e.*, Houston's Undisputed Material Fact No. 10, that Luna had been terminated from Casa Chevrolet for stealing) does not appear to be based on personal knowledge. I will consider only properly admissible evidence when ruling upon Group 1's motion.

Houston claims that he experienced racial insults while working at Casa Chevrolet. Initially the comments were sporadic. In September of 2007, while a group of Casa employees, including managers, were riding to breakfast, one of Houston's co-workers, David Gunther, said "Melvin wants some chicken and watermelon." In October of 2007 Danny Edwards, another co-worker, said to Houston that "Black people have big dicks."

The atmosphere at Casa Chevrolet changed when Brian Luna was rehired in January of 2008 as general manager. As general manager, Luna was Houston's immediate supervisor, and Houston had problems working with Luna. According to Houston, Luna regularly changed information on customers' sales applications to get approval for sales or asked his mother, who worked for a lending institution, to get the sale approved. Luna told Houston to do "whatever it takes" to get financing for a new car sale, including falsifying an applicant's income on a credit application. Luna attempted to have Houston complete an illegal "straw man" transaction with an elderly customer. Houston refused to take part in the straw man transaction and Luna's practice of altering credit applications. Houston complained about Luna's practices to Robert Medina, the finance director, who had the final authority to approve deals or reject them. The parties dispute whether, after Houston complained, Medina put a stop to Luna's improper actions. Houston and Medina believe that Luna targeted Houston after Houston complained about the straw man transaction.

Luna created an atmosphere of intolerance at Casa Chevrolet by telling inappropriate racial and sexual jokes at work. According to Robert Medina, Christobal Jaramillo and Christopher Beasley, almost every day Luna would come to the sales room and make both racially derogatory and sexually discriminatory comments. This conduct led to Rick Pete, the general manager, and other employees also making inappropriate racial and sexual jokes in the workplace.

Before he fired Houston on February 28, 2008, Luna made a series of racially inappropriate

remarks to him. On two occasions Luna greeted Houston by saying "What's up my nigger."[4] On two other occasions, Luna said that "Black men have big dicks." Two other times Luna stated that "Black people like chicken and watermelon." Finally, on several occasions during political discussions shortly after then-Senator Barack Obama announced his candidacy for President of the United States, Luna stated that "There will never be a black president in the White House."

On February 28, 2008 Luna fired Houston. Luna told Houston only that the dealership was moving in a different direction. Houston testified at his deposition that he thought he was fired for "showing up" Luna with superior sales numbers.

### RACIAL DISCRIMINATION UNDER TITLE VII AND THE NMHRA

Houston brought claims for racial discrimination under both Title VII and the NMHRA.[5] Title VII and the NMHRA are violated when the workplace is permeated with discriminatory intimidation, ridicule or insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004)). The test is a disjunctive one, requiring Houston to prove that the harassing conduct was either severe or pervasive enough to create a hostile work environment. *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir. 1997). When there is evidence of both racial

---

[4] Luna may have been quoting Jackie Chan's line in the film *Rush Hour*. *See Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1033 (8th Cir. 2006). This segment of the film may be found on YouTube at http://www.youtube.com/watch?v:oN2LJTCB+g.

[5] While New Mexico courts have not adopted federal law, they have used the evidentiary methodology developed in *McDonnell-Douglas v. Green*, 411 U.S. 792, 802-05 (1973), when interpreting the NMHRA. *Cates v. Regents of the New Mexico Inst. of Mining & Tech.*, 954 P.2d 65, 69-70 (N.M. 1998). Because Houston's burden under the NMHRA is identical to his burden under Title VII, my analysis of federal law applies equally to his NMHRA claim. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 n.5 (10th Cir. 2005) (noting the same).

and sexual hostility, the court can aggregate that evidence when determining whether a plaintiff has established a hostile work environment. *Id.* (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416-17 (10th Cir. 1987)).

The victim must prove that he was targeted for harassment because of his race or national origin. *Herrera,* 388 F.3d at 680 (citing *Sandoval*, 388 F.3d at 1327). The workplace must be both objectively and subjectively offensive: "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). In deciding whether or not a hostile environment existed, it is necessary to look at all of the circumstances involved in the situation, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nieto v. Kapoor*, 268 F.3d 1208, 1218 (10th Cir. 2001) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993)).

To establish his claim of a racially hostile work environment, Houston must prove more than "a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." *Herrera,* 474 F.3d at 680 (quoting *Chavez v. New Mexico,* 397 F.3d 826, 832 (10th Cir. 2005)). Group 1 argues that the comments made by Luna and its other employees are simply stray remarks that were neither severe nor pervasive enough to create a jury issue on discrimination

Several Tenth Circuit cases have affirmed decisions that the plaintiff failed to show that the conduct was pervasive or severe, but those cases are distinguishable. In *Chavez,* 397 F.3d at 832, and *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998), the court held that two racially offensive comments over a two year period fell far short of the "steady barrage" required for a

8

hostile environment claim. Similarly, in *Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir. 1995), the court affirmed the summary judgment granted to the defendant when the plaintiff experienced two overtly racial remarks and one arguably racial comment in eight years. *Id.* at 551-52 .

More recently, considering facts more similar to the present case, the Tenth Circuit reversed a grant of summary judgment for the defendant on the plaintiff's hostile work environment claim. *Herrera,* 474 F.3d at 691. The court stated that whether a workplace is permeated with discriminatory insults that are sufficiently severe or pervasive to create a hostile work environment "is particularly unsuited for summary judgment because it is quintessentially a question of fact." *Id.* at 680 (quoting *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 923 (10th Cir. 2001)). In reversing the summary judgment granted to the defendant, the court recognized that Herrera presented evidence of five or six discrete incidents of racial harassment by his supervisor, plus evidence of other harassment, that occurred over four years. *Id.* at 680-81. Similarly, in *Smith v. Nw. Fin. Acceptance, Inc.*, the court found that proof of six sexually inappropriate statements made by a supervisor over a 23-month period was sufficient to support a finding of pervasive harassment. 129 F.3d at 1415.

In this case, Houston has presented evidence of six racially offensive remarks made to him by Luna in two months, plus arguably racial comments about then-Senator Obama. He has also presented ample evidence that Luna created an atmosphere of racial and sexual intolerance at Casa Chevrolet. Although a jury could find that Luna's treatment of Houston was not sufficiently pervasive or severe to create a racially hostile work environment, Houston has established a genuinely disputed issue of fact that precludes summary judgment for Group 1 on Houston's claims under Title VII and the NMHRA.

Group 1 next argues that it is entitled to summary judgment under *Burlington Indus., Inc.*

*v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998), because Houston failed to report the racial harassment in a timely manner. Group 1's argument demonstrates a profound misunderstanding of this defense. In *Ellerth*, the Supreme Court set out an affirmative defense to liability when the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and the employee unreasonably failed to take advantage of the preventative opportunities provided by the employer. *Ellerth*, 524 U.S. at 765. The Court made clear, however, that the defense is not available if a tangible employment action is taken against the employee: "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.*

This limitation on the use of the *Ellerth/Faragher* defense has been specifically recognized by both the Tenth Circuit and the New Mexico Supreme Court. *See Pinkerton v. Colorado Dep't. of Transp.*, 563 F.3d 1052, 1059 (10th Cir. 2009) ("First, the employer is vicariously liable when 'the supervisor's harassment culminates in a tangible employment act, such as discharge, demotion, or undesirable reassignment.' In this situation, the employer has no affirmative defense.") (citation omitted); *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 70 (N.M. 2004) ("This defense, however, is not available to an employer when the employee has experienced a tangible employment action, 'such as discharge, demotion, or undesirable reassignment.'") (citations omitted). It is undisputed that Luna fired Houston on February 28, 2008. Therefore, Group 1 may not assert the *Ellerth/Faragher* defense to Houston's claim for racial discrimination.

### RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY

The tort of retaliatory discharge in New Mexico is a narrow exception to the general rule that an at-will employee may be discharged with or without cause. *Shovelin v. Cent. New Mexico Elec. Coop., Inc.*, 850 P.2d 996, 1006 (N.M. 1993). To recover for retaliatory discharge, Houston must

prove that he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn. *Id.* Houston must also show a causal connection between his actions and his subsequent discharge. *Id.*

As the New Mexico Supreme Court explained, the "linchpin" of this cause of action "is whether by discharging the complaining employee the employer violated a 'clear mandate of public policy.'" *Id.* (citation omitted). This clear mandate of public policy may be found in legislation or in decisions of the courts. *Id.*

In this case, Houston reported suspected illegal activities, namely, the falsification of financial documents by Luna and others. Although Houston completely failed to address this issue in his Response, these activities may constitute fraud, forgery or some other violation of New Mexico criminal law. *See* N.M.S.A. §§ 30-16-6, 30-16-10 (1978 Comp.). New Mexico has a strong public policy against condoning criminal activity and in favor of uncovering and eradicating it. *Garrity v. Overland Sheepskin Co. of Taos*, 917 P.2d 1382, 1386 (N.M. 1996).

Employees who claim that they were discharged for reporting illegal activities must show that their actions furthered a public interest rather than serving primarily a private interest. *Id.* at 1387. In *Garrity*, the plaintiffs reported to the owner's agent their suspicions that the store manager was using illegal drugs at the retail store location in Santa Fe, but they did not notify the police. *Id.* at 1384, 1388. The court affirmed judgment for the defendant because the plaintiffs' actions primarily benefitted their employer and themselves, rather than the public at large. *Id.* at 1389. The court found no evidence that the manager's behavior posed any threat of harm to the public or that the plaintiffs were acting to protect the general public. *Id.* The court specifically noted that "this case [does not] involve an economic crime that directly injures the general public and that an employer can remedy immediately if made aware of the problem." *Id.*

11

Houston has presented sufficient evidence on this issue: Luna's behavior posed a direct threat of economic harm to customers of the dealership, and Houston was acting to protect these customers when he protested the "straw man" transaction and other falsifications of documents.

Group 1 claims that Houston cannot recover for retaliatory discharge because Medina, the finance manager, put a stop to the illegal practices, and because Houston testified that he thought he was fired for "showing up" Luna with better sales numbers. (Doc. 88 at 13-14.) Houston, of course, does not know why he was fired and only knows that Luna told him that the dealership was moving in another direction. Group 1's focus is misplaced. It is not Medina's actions or Houston's opinion that matters; it is Luna's motive that is a key element in whether Luna fired Houston in retaliation for his actions. *Big J Enters. v. Kehoe*, 953 P. 2d 1089, 1097 (N.M. Ct. App. 1997). Because employers will rarely admit to acting with retaliatory intent, Houston may show by indirect or circumstantial evidence that his discharge was motivated by his reporting of financial irregularities. *See id.* at 1098. The evidence that Houston performed well in his positions at Casa and started having problems with Luna after he reported the "straw man" incident is sufficient to create a fact issue on whether he was terminated in retaliation for voicing his opposition to Luna's actions.

### CONCLUSION

Because there are fact issues present that preclude the entry of summary judgment, I will deny Group 1's Motion for Summary Judgment.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.